UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
G & G CLOSED CIRCUIT EVENTS, LLC,

                      Plaintiff,

        v.

TORRI CLAYTON, individually and d/b/a CHERI'S
BEDSTUY LLC, and CHERI'S BEDSTUY LLC d/b/a
CHERI'S BEDSTUY,

                      Defendants.
-------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

24-CV-4191
(Block, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

      Plaintiff G & G Closed Circuit Events, LLC filed this action on June 12, 2024, against

Defendant Torri Clayton, individually and d/b/a Cheri's BedStuy LLC ("Ms. Clayton"), and

Cheri's BedStuy LLC, d/b/a Cheri's Bedstuy ("Cheri's") (collectively "Defendants").  *See

generally* Dkt. No. 1.  The Complaint alleges violations of the Federal Communications Act of

1934 ("FCA"), as amended, 47 U.S.C. § 605, and the Cable & Television Consumer Protection

and Competition Act of 1992, as amended 47 U.S.C. § 553.  *Id.* at ¶ 1.

      Currently pending before this Court, on referral from the Honorable Frederic Block, United

States District Judge, is Plaintiff's motion for default judgment.  *See generally* Dkt. No. 14; *see

also* Referral Order dated Nov. 15, 2024.  For the reasons set forth below, the undersigned

respectfully recommends that Plaintiff's motion be granted in part and denied in part.

**I.    Background**

    **A.    Factual Allegations**

      The following facts are taken from the Complaint, Plaintiff's motion, and the attachments

filed in support of Plaintiff's motion; the facts are assumed to be true for the purposes of this

motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor); *Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. IKNA Constr. LLC*, No. 24-CV-561 (CBA) (JAM), 2025 WL 447731, at *2 (E.D.N.Y. Jan. 15, 2025), *report and recommendation adopted*, 2025 WL 777108 (E.D.N.Y. Mar. 11, 2025).

Plaintiff, a California corporation with its principal place of business located in Henderson, Nevada, is "an international distributor of sports and entertainment programming." Dkt. No. 1 at ¶ 6; Dkt. No. 14-2 at 1. According to Plaintiff, "[b]y contract, Plaintiff purchased the [exclusive] domestic commercial exhibition rights to broadcast the Gervonta Davis v[s.] Rolando Romero Lightweight World Championship Fight Program, telecast nationwide on Saturday, May 28, 2022 [the 'Program']." Dkt. No. 14-2 at 1, Dkt. No. 1 at ¶ 19. The Program "included the main event (between Davis and Romero)," along with "undercard or preliminary bouts [] at commercial establishments such as theaters, arenas, bars, clubs, lounges, restaurants and the like throughout New York and other geographic locales." *Id.*; *see* also Dkt. No. 1 at 13-21[1] (containing an exhibit to the complaint that is purportedly a copy of the license agreement).

Plaintiff represents that, pursuant to the terms of the licensing agreement, it entered into "sublicensing agreements with various commercial entities throughout North America, including within the state of New York." *Id.* at ¶ 20. Such sublicensing agreements granted the commercial entities the rights to "publicly exhibit the Program within their respective commercial establishments." *Id.* As a result, Plaintiff maintains that the Program "could only be exhibited in a commercial establishment in New York if said establishment was contractually authorized to do

---

[1] Page citations are to the ECF-stamped page numbers.

so by Plaintiff[.]" *Id.* at ¶ 21. Plaintiff additionally expended money marketing, advertising, promoting, administering, and transmitting its closed-circuit rights to the Program, and contracted with various New York establishments to broadcast the Program in exchange for a fee. *Id.* at ¶¶ 22-23.

According to the Complaint, transmission of the Program—originating from a satellite uplink and subsequently re-transmitted to cable systems and satellite companies via satellite signal—"was electronically 'coded' or 'scrambled.'" *Id.* at ¶ 24. Thus, to clearly receive the telecast, that transmission "had to be decoded with electronic decoding equipment." *Id.* Commercial establishments that were authorized to broadcast the Program either received "electronic decoding equipment and the satellite coordinates necessary to receive the signal," or had their satellite or cable provider notified to unscramble the reception of the Program for the duration of the broadcast. *Id.* at ¶ 25.

Due to the prevalence of illegally accessing and pirating Plaintiff's broadcasts across the country, Plaintiff "retained auditors and law enforcement personnel to detect and identify signal parties." Dkt. No. 14-1 at ¶ 6. Plaintiff compiled a list of authorized commercial venues that had contracted to legally broadcast the event "[t]o ensure that only locations that illegally obtained the Program were visited by the auditors." *Id.*

Cheri's, a domestic limited liability company organized and existing under the laws of New York, is the owner, operator, licensee, permittee, person in charge, and/or entity with dominion, control, oversight, and management of the commercial establishment located at 216 Malcom X Boulevard in Brooklyn, New York. Dkt. No. 1 at ¶¶ 7-8. At the times relevant to the allegations in the Complaint, Ms. Clayton was the owner and principal of Cheri's as identified by the New

York State Liquor Authority License and the On Premises Liquor License issued to the establishment. *Id.* at ¶¶ 9-11.

On May 28, 2022, an investigator named Jamie Tamburo entered Defendants' premises, containing approximately eleven to twelve patrons, and observed the television behind the bar portraying the undercard bout between Eduardo Ramirez and Luis Melendez. Dkt. No. 14-2 at 2; *see also* Dkt. No. 14-3 at 31. Based on Mr. Tamburo's observations, Plaintiff alleges that Ms. Clayton, as the owner and principal of Cheri's, "directed the employees of [Cheri's] to unlawfully intercept, receive and broadcast Plaintiff's Program at [Cheri's] or intentionally intercepted, and/or published the Program at [Cheri's] herself." Dkt. No. 14-3 at ¶ 14. According to the Complaint, Defendants never paid Plaintiff the $600.00 commercial broadcast fee, calculated based on the size of the establishment. *Id.* at ¶ 28. Despite never obtaining authorization, Defendants broadcast the Program while selling alcoholic and non-alcoholic beverages to its patrons. *Id.* at ¶¶ 26-27. Defendants allegedly "broadcast the Program on 1 screen with approximately 11-12 people in attendance." *Id.*

### B.    Procedural History

On June 12, 2024, Plaintiff initiated this action. *See generally* Dkt. No. 1. On June 13, 2024, the Court scheduled an initial conference between the parties to set the discovery schedule for the action. Dkt. No. 5. On June 20, 2024, the Clerk of the Court issued summonses as to both Defendants. Dkt. Nos. 6-7.

On July 15, 2024, Plaintiff filed the summons returned executed as to Cheri's. Dkt. No. 8. Plaintiff's affirmation of service indicates that Cheri's was served with a copy of the summons and Complaint with the New York Secretary of State. *Id.* Plaintiff filed the summons returned executed as to Ms. Clayton on July 19, 2024. Dkt. No. 9. Plaintiff's affidavit of service indicates

4

that service was attempted at an apartment at 725 Monroe Street in Brooklyn, New York on four separate occasions: on June 25, 2024 at 6:17 p.m.; on June 28, 2024 at 9:21 a.m.; on July 8, 2024 at 6:57 p.m.; and on July 9, 2024 at 5:37 p.m.  *Id.* at 1.  After the unsuccessful attempt at service on July 9, 2024, Plaintiff's process server affixed a copy of the summons and Complaint to the door of the Brooklyn apartment.  *Id.*  Additionally, on July 10, 2024, the process server mailed a copy of the summons and Complaint via first-class postpaid envelope to that same apartment.  *Id.*

On August 19, 2024, after Defendants' nonappearances, the Court adjourned the initial conference *sine die*.  Text Order dated Aug. 19, 2024.  The Court ordered Plaintiff to seek its certificates of default against Defendants by September 23, 2024.  Text Order dated Aug. 23, 2024.

On September 23, 2024, Plaintiff sought its certificates of default from the Clerk of the Court for Defendants.  Dkt. No. 12.  On September 24, 2024, the Clerk of the Court issued certificates of default as to both Defendants.  Dkt. No. 13.  On October 15, 2024, the Court ordered that Plaintiff file its motion for default judgment by November 15, 2024.  Text Order dated Oct. 15, 2024.

On November 15, 2024, Plaintiff filed the instant motion for default judgment.  *See generally* Dkt. No. 14.  Plaintiff seeks damages for Defendants' alleged violations of Title 47, specifically requesting the enhanced recovery under 47 U.S.C. § 605 rather than 47 U.S.C. § 553.[2] Dkt. No. 14 at 4.  Specifically, Plaintiff's requests $1,800 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) and $5,400 in damages under 47 U.S.C. § 605(e)(3)(C)(ii), totaling $7,200.

---

[2]  Plaintiff notes that under *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1007-08 (2d Cir. 1993), allegations that establish violations of both Sections 553 and 605 cannot result in recovery under both statutes.  *See* Dkt. No. 14 at 4.  As a result, claimants are entitled to the more severe statutory damages under Section 605 when violations of both statutes have been found.  *Sykes*, 997 F.2d at 1008 ("If [Section 605] was violated and [the plaintiff] was aggrieved thereby, the court should grant [the plaintiff's] request for damages under § 605(e) instead of granting the lesser damages available under § 553").

Dkt. No. 14-5 at 2. Plaintiff further contends that it is entitled to costs and reasonable attorneys' fees, asking that it be granted "30 days from the date the judgment becomes final to submit its [m]otion for costs and attorneys' fees." Dkt. No. 14 at 13; Dkt. No. 14-5 at 2.

On November 15, 2024, Judge Block referred Plaintiff's motion to the undersigned. Referral Order dated Nov. 15, 2024.

## II.  Standard for Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a); *see Esquivel*, 2023 WL 6338666, at *3 ("when a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall enter a default." (citing Fed. R. Civ. P. 55(a)). "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(1)).

At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). To "enter or effectuate judgment" the Court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Nevertheless, in evaluating a motion for default judgment, a court accepts as true

the plaintiff's well-pleaded factual allegations, except those relating to damages. *Greyhound Exhibitgroup*, *Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). A plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015)).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Chen*, 2023 WL 2583856, at *7 (quotations and citation omitted).

The Second Circuit has held that "under Rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment.'" *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) ("Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is 'necessary and proper' to hold an inquest on damages."); *see also Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d

536, 545 (S.D.N.Y. 2015) ("To determine the damages owed, courts often conduct an inquest hearing, but such a hearing is not required").[3]

### III.    <u>Jurisdiction and Venue</u>

The Court "must satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants." *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019); *see Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

#### A.    **Subject Matter Jurisdiction**

The Court has subject matter jurisdiction over this action.  Pursuant to 28 U.S.C. § 1331, district courts retain "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States."  28 U.S.C. § 1331.

The Complaint alleges violations of Title 47, including those under the Communications Act of 1934 and the Cable & Television Consumer Protection and Competition Act of 1992.  *See* Dkt. No. 1 ¶ 1.  Nothing in the record suggests that Plaintiff's claims are not colorable, immaterial, made solely for the purpose of obtaining jurisdiction, fully insubstantial, or frivolous.  *A&B Alt. Mktg. Inc. v. Intl. Quality Fruit Inc.*, 35 F.4th 913, 915 (2d Cir. 2022).  This action thus "arises under" federal law and gives the Court subject matter jurisdiction over the action.  *See, e.g.*, *Joe Hand Promotions, Inc. v. Sylvestre*, No. 20-CV-822 (KAM), 2021 WL 810338, at *2-*7 (E.D.N.Y. Mar. 3, 2021) (granting motion for default judgment alleged violations of 47 U.S.C. §§ 553 and 605); *G & G Closed Cir. Events, LLC v. Palaguachi*, No. 21-CV-3711 (PKC) (MMH), 2023 WL 2531628, at *3 (E.D.N.Y. Mar. 15, 2023) (noting that "[p]ursuant to 28 U.S.C. § 1331, the Court

---

[3] As discussed below, a hearing to determine liability and damages was unnecessary here in light of Plaintiff's submissions.

has original jurisdiction over Plaintiff's claims brought under the Communications Act, 47 U.S.C. § 605 *et seq*., and the Cable & Television Consumer Protection and Competition Act, 47 U.S.C. § 553 *et seq*.").

Accordingly, the Court has subject matter jurisdiction over this action.

**B.    Standing**

"Under the FCA, any person with proprietary rights in the intercepted communication, may bring a civil action for relief, including damages." *J & J Sports Prods., Inc. v. Ahuachapan Corp.*, 422 F. Supp. 3d 652, 663 (E.D.N.Y. 2019) (quoting 47 U.S.C. § 605(d)(6)) (quotation marks omitted).  Here, the Complaint alleges that Plaintiff possessed exclusive rights to broadcast the Program, which could only be shown in venues that contracted with Plaintiff and paid the commercial fee.   Dkt. No. 1 at ¶¶ 18-27.  Additionally, appended to the Complaint is a copy of the licensing agreement, exemplifying its exclusive rights to broadcast the Program.  *Id.* at 13-21. Thus, Plaintiff has alleged standing to bring the instant suit.  *See, e.g.*, *Ahuachapan*, 422 F. Supp. 3d at 663 (finding the plaintiff established standing under similar circumstances).

**C.    Personal Jurisdiction**

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (citation omitted); *see also BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2023 WL 8853704, at *5 (E.D.N.Y. Dec. 22, 2023), ("A court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process.") (internal quotations and citation omitted), *report and recommendation adopted* (Jan. 9, 2024).

Here, the Court has personal jurisdiction over Defendants. First, Plaintiff properly served the Summons and Complaint on Defendants. Federal Rule of Civil Procedure 4(e)(1) permits a party to effect service in accordance with the rules of the state where the district is located or where service is made. Fed. R. Civ. P. 4 (e)(1).

Plaintiff properly served Cheri's, a New York limited liability company, by delivering copies of the Summons and Complaint to the New York Secretary of State.[4] *See* Dkt. No. 1; Dkt. No. 6; *see also* Fed. R. Civ. P. 4(h)(1)(A); N.Y. C.P.L.R. § 311-a (a); N.Y. Limit. Liab. Co. L. § 303(a)(1). New York law permits a party to effect service by delivering the summons and complaint to the New York Secretary of State as an agent of the company. N.Y. Limit. Liab. Co. L. § 303(a)(1). "[S]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

Further, New York state law permits service to be made by "delivering the summons . . . to a person of suitable age and discretion at the actual place of business . . . of the person to be served and by either mailing the summons . . . to the person to be served at his or her actual place of business" or to the person's last known residence. C.P.L.R. § 308(2). Alternatively, where service cannot be made with due diligence to either the person to be served, individually, or a person of suitable age and discretion at the actual place of business, dwelling place, or usual abode of the person to be served, New York state law also permits "nail and mail" service, which entails

---

[4] In the Complaint, Plaintiff alleges that Cheri's "was a Domestic Limited Liability Company organized and existing under the laws of the State of New York." Dkt. No 1 ¶ 7. This Court takes judicial notice of the New York State Secretary of State's website, which indicates that Defendant Cheri's is a domestic limited liability company in Kings County. *See N.Y. Dep't of State, Div. of Corps., Corporation & Business Entity Database Search*, https://apps.dos.ny.gov/publicInquiry/ (last visited March 28, 2025).

"affixing the summons to the door of [] the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first-class mail to the person to be served at his or her actual place of business." C.P.L.R. § 308(4).

Here, Plaintiff attempted to personally serve the Summons and Complaint on Ms. Clayton at her apartment on 725 Monroe Street in Brooklyn on four separate occasions: on June 25, 2024 at 6:17 p.m.; on June 28, 2024 at 9:21 a.m.; on July 8, 2024 at 6:57 p.m.; and on July 9, 2024 at 5:37 p.m. Dkt No. 9 at 1. Moreover, after the unsuccessful attempt at service on July 9, 2024, Plaintiff's process server affixed a copy of the summons and Complaint on the door of Ms. Clayton's apartment. *Id.* The process server additionally mailed a copy of the summons and Complaint via first-class postpaid envelope to that same apartment on July 10, 2024. *Id.*

Thus, by attempting multiple times to personally serve Ms. Clayton at her last known address, Plaintiff exercised due diligence and was entitled to avail itself of "nail and mail" service under C.P.L.R. 308(4). *See Allstate Ins. Co. v. Rozenberg* 771 F. Supp. 2d 254, 262 (E.D.N.Y. 2011) (noting due diligence under C.P.L.R. 308(4) can be satisfied when there are quality attempts at delivery that include times in which it is likely that the person to be served would be available, including weekday evenings and weekend mornings). Moreover, "[a] properly executed affidavit, like the one executed in this case, 'is *prima facie* evidence of proper service.'" *Nat'l Cas. Co. v. Runway Towing Corp.*, No. 19-CV-5091 (DG) (CLP), 2021 WL 5310857, at *2-*3 (E.D.N.Y. Oct. 19, 2021) (quoting *San Lim v. MTA Bus Co.*, 190 A.D.3d 493, 493 (1st Dep't 2021)), *report and recommendation adopted*, 2021 WL 5304055 (E.D.N.Y. Nov. 15, 2021).

Second, New York State has general jurisdiction over its residents. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016). As noted earlier, Cheri's is a New York limited liability company. *See* Dkt. No. 1 ¶ 7. New York courts may exercise jurisdiction over

New York limited liability companies doing business in the state.  *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG) (PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014)); *McLaughlin v. Onanafe Mgmt. Sols. LLC*, No. 22-CV-6792 (PKC) (MMH), 2024 WL 4184485, at *4 (E.D.N.Y. Sept. 14, 2024) (explaining that the court has general jurisdiction over defendant-limited liability company because it is a New York limited liability company doing business in New York), *report and recommendation adopted*, 2024 WL 4355485 (E.D.N.Y. Sept. 30, 2024); *see also* N.Y. C.P.L.R. § 301.

Accordingly, Plaintiff satisfies the requirements for personal jurisdiction.

### D.    Venue

"[A] civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situate."  28 U.S.C. § 1391(b)(2).  Here, the events giving rise to the cause of action occurred at the premises that Defendants leases and operates in Brooklyn, New York (Dkt. No. 1 at ¶¶ 7-17, 26-28), and venue is therefore proper in this district.

### IV.    <u>Procedural Compliance with Local Rules 7.1 and 55.2</u>[5]

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules."  *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D,*

---

[5] The Local Rules of the United States District Court for the Southern and Eastern Districts of New York were updated on January 2, 2025.  As set forth in Local Civil Rule 1.1, "[t]hese Local Civil Rules take effect on January 2, 2025 (the 'Effective Date') and govern actions pending or filed on or after that date."  For actions pending on the Effective Date, if fewer than 14 days remain to perform an action governed by these Rules, the provisions of the previous Local Rules effective on January 1, 2025 will govern.  Thus, given the timing of the filing of the motion for default judgment on November 15, 2024, the prior Local Rules—updated on July 1, 2024—are applicable here.

*AFL-CIO v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Company v. Adweek*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)). "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution." *Fin. Servs. Vehicle Tr. v. Osmeña*, No. 22-CV-7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (internal quotations and citation omitted).

### A.    Entry of Default

The Court respectfully recommends a finding that the Clerk of Court properly issued a certificate of default as to Defendants.  Defendants were served on June 28, 2024 and July 9, 2024. Dkt. Nos. 8-9; *see also* Dkt. No. 11 (explaining same).  Defendants were required to answer, move, or otherwise respond to the Complaint by July 19, 2024 and July 31, 2024, respectively.  Dkt. Nos. 8-9; *see also* Fed. R. Civ. P. 12(a)(1)(A)(i).  When Defendants failed to do so, and consistent with the Court's order, Plaintiff filed a request for an entry of default pursuant to Local Civil Rule 55.1. Dkt. No. 14; Text Order dated Oct. 25, 2024; L. Civ. R. 55.1.  The Clerk of Court entered default as to Defendants on September 24, 2024.  Dkt. No. 13.

Accordingly, the Clerk of the Court appropriately entered certificates of default against Defendants.

### B.    Local Civil Rule 7.1

Local Civil Rule 7.1 requires that a plaintiff attach to a motion for default (1) a notice of motion specifying the applicable rules or statutes pursuant to which the motion is brought, (2) a memorandum of law setting forth the cases and other authorities relied upon in support of the motion, and (3) supporting affidavits and exhibits containing any factual information and portions of the record necessary for the decision of the motion.  *See* L. Civ. R. 7.1.  Plaintiff complied with

the procedural requirement set forth in Local Civil Rule 7.1 by filing a notice of motion (Dkt. No. 14), a memorandum of law (Dkt. No. 14-2), and affidavits and exhibits (Dkt. Nos. 14-2, 14-3-7) in support of the motion.

### C.   Local Civil Rule 55.2

Additionally, Local Civil Rule 55.2(b) requires that a plaintiff attach to a motion for default judgment the Clerk's certificate of default, a copy of the Complaint, and a proposed form of default judgment.  L. Civ. R. 55.2(b).  Local Civil Rule 55.2(c) also requires that all papers submitted in connection with a motion for a default judgment be mailed to the "last known business address" of non-individual defendants.  L. Civ. R. 55.2(c).

Plaintiff complied with the procedural requirements of Local Civil Rule 55.2 by attaching to their application for default judgment (1) the Clerk's certificate of default (Dkt. No. 14-3 at 6); (2) a copy of the Complaint (*id.* at 10-19); and (3) a proposed form of default judgment (Dkt. No. 14-5).  Plaintiff also mailed all papers to Defendants' last known business address.  *See* Dkt. No. 14 at 4; *see* also Dkt. No. 14-3 at 35-36.  In light of the above, the jurisdictional and procedural prerequisites to entry of a default judgment have been satisfied by Plaintiff.

Moreover, Defendants' failure to respond to the Complaint here was willful.  Plaintiff filed a certificate of service indicating that it served the motion and all corresponding documents on both Ms. Clayton's personal address and Cheri's business address.   Dkt. No. 14 at 4.  Notwithstanding Plaintiff's efforts described above, Defendants did not respond to the Complaint, did not appear, and have not in any way attempted to defend this action, thus constituting willfulness in the context of default judgment.  *See, e.g., Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946 (JS) (AKT), 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) ("[the] [d]efendant has not responded to [the] [p]laintiffs' motion for default judgment, has not

appeared in this action, and has not communicated with the Court in any way. Accordingly, [the] [d]efendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

Accordingly, the Court respectfully recommends that Plaintiff be found to have satisfied the jurisdictional requirements to proceed with its motion.

**V.    Compliance with the Servicemembers Civil Relief Act**

The Servicemembers Civil Relief Act ("SCRA") requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. § 3931; *see also Windward Bora, LLC v. Ortiz*, No. 21-CV-04154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *report and recommendation adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022). "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered." *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012).

Here, Plaintiff submits a sworn declaration stating that Ms. Clayton is not on active military status. Dkt. No. 14-3 at ¶ 4. Plaintiff attaches a copy of a status report from the SCRA website showing Ms. Clayton was not on active duty as of June 25, 2024. *Id.* at 44. Plaintiff's submissions are sufficient to establish compliance with the SCRA. *See Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD) (RER), 2023 WL 375647, at *5 (E.D.N.Y. Jan. 3, 2023) (finding that a plaintiff can comply with the SCRA by obtaining "a report certifying active-duty military status through the [SCRA] website."), *report and recommendation adopted*, 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023).

## VI.   Liability

The Complaint alleges violations of both 47 U.S.C. § 605 and 47 U.S.C. § 553 against Defendants.  Dkt. No. 1 at ¶¶ 29-45.

### A.   Cheri's Liability

Section 605(a) provides, in pertinent part, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge the . . . contents, substance, purport, effect, or meaning of such intercepted communication to any person."  47 U.S.C. § 605(a).  Section 553(a) similarly provides that "[n]o person shall intercept or receive . . . any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a).  "Sections 553 and 605 are not mutually exclusive, and both statutes apply when certain television programming is transmitted over both cable and satellite."  *Joe Hand Promotions, Inc. v. Mohamed*, No. 20-CV-557 (KAM) (RLM), 2021 WL 2895637, at *4 (E.D.N.Y. July 9, 2021) (citing *Sylvestre*, 2021 WL 810338, at *3); *J & J Sports Prods. Inc. v. Inga*, No. 18-CV-2542 (PKC (RLM), 2019 WL 1320278, at *3 (E.D.N.Y. Mar. 22, 2019) (citing C*mty. Television Sys. Inc. v. Caruso*, 284 F.3d 430, 435 (2d Cir. 2002)) ("In the Second Circuit, courts have applied [Section] 605 to theft of cable communications that were originally radio or satellite communications").

Despite their mutual applicability in certain circumstances, "the law in this circuit is clear that [the] plaintiff may recover under only one of those statutes."  *Circuito Cerrado, Inc. v. Pizzeriay Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 114 (E.D.N.Y. 2011); *Inga*, 2019 WL 1320278, at *3 (collecting cases).  Accordingly, "where the defendant's liability can be established under both sections, the Second Circuit has made clear that the court should award

damages pursuant to section 605." *J & J Sports Prods., Inc. v. His & Hers Bar & Lounge Inc.*, No. 17-CV-4181 (ADS) (GRB), 2018 WL 4925706, at *3 (E.D.N.Y. Aug. 31, 2018) (collecting cases), *report and recommendation adopted*, 2018 WL 4922912 (E.D.N.Y. Oct. 9, 2018).

"Courts in the Eastern District of New York have also held that a plaintiff's allegations state a valid claim under Section 605(a) when 'the plaintiff pleads that (1) the plaintiff holds an exclusive license to broadcast the Event at issue; (2) the entity defendant had no right to commercially broadcast the transmission unless it contracted with the plaintiff through a licensing agreement; and (3) the entity defendant screened the program despite failing to contract with the plaintiff for authority to do so.'" *Mohamed*, 2021 WL 2895637, at *4 (quoting *Joe Hand Promotions, Inc. v. Skaf*, No. 19-cv-3391 (LDH) (RLM), 2020 WL 3035351, at *5 (E.D.N.Y Mar. 17, 2020)).

Here, Plaintiff adequately alleges that Cheri's violated Section 605 for the purposes of obtaining default judgment.  First, Plaintiff asserts that it had exclusive rights to broadcast the Program, as supported by the licensing agreement appended to the Complaint.  *See* Dkt. No. 1 at ¶ 19; *id.* at 13-21 (containing terms of the contract granting Plaintiff exclusive rights to the event). Plaintiff claims it contracted with various commercial establishments throughout New York to broadcast the Program in exchange for the commercial fee.  *Id.* at ¶ 22.  Second, Plaintiff contends that Cheri's never entered into a sub-licensing agreement to broadcast the Program or paid the applicable commercial fee (*id.* at ¶ 28), and that Cheri's never obtained approval from Plaintiff to broadcast the Program on its premises.  *See* Dkt. No. 14-3 at ¶¶ 9, 12.  Finally, Plaintiff was informed by Mr. Tamburo that Cheri's broadcasted the Program on its premises despite failing to obtain authorization by Plaintiff, corroborated by a photograph displaying the Program on the television behind the bar.  *See* Dkt. No. 14-3 at 31; Dkt. No. 1 at ¶¶ 12-17, 26-28; Dkt. No. 14-3

17

at 42.  Plaintiff further provided multiple Instagram posts advertising a broadcast of the Program at Cheri's, including a picture of the flyer (Dkt. No. 14-3 at 38), and two posts that display patrons watching the Program at the bar with the caption "Cheri's Bed Stuy."  Dkt. No. 14-3 at 39-40.

Although Plaintiff does not allege the precise way that Defendants impermissibly accessed the Program, it asserts that it was likely through: a misrepresentation that Cheri's was a residential property; access from an illegal streaming website or foreign satellite broadcast; use of an illegal cable drop or splice from an adjacent residential building; or purchase of other illegal decryption devices and illegal satellite codes.  Dkt. No. 14-1 at ¶ 10.  Indeed, Section 605 does not require specific allegations of how Defendants "actually received the signal[.]"  *Joe Hand Promotions, Inc. v. Kouvaros*, No. 20-CV-3979 (EK) (SJB), 2022 WL 1422571, at *5 (E.D.N.Y. Feb. 1, 2022).  Rather, "all that must be alleged to state a Section 6905 claim is that the communication originated via satellite or radio," *id.* (quoting *J & J Sports Prods., Inc. v. Abdelraouf*, No. 18-CV-2547 (ARR) (VMS), 2019 WL 457719, at *3 (E.D.N.Y. Feb. 5, 2019), which here Plaintiff adequately pleads.  Dkt. No. 1 at ¶¶ 24-25 ("The Program originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal").

Plaintiff's allegations, taken together, adequately support a finding that Cheri's is liable for damages under 47 U.S.C. § 605(a).  *See Mohamed*, 2021 WL 2895637, at *5 (finding similar allegations sufficient to establish liability under Section 605); *Joe Hand Promotions, Inc. v. Eddie Jr.'s Sports Lounge, Inc.*, No. 22-CV-7100 (EK) (CLP), 2024 WL 1285474, at *4 (E.D.N.Y. Mar. 6, 2024) (same), *report and recommendation adopted*, 2024 WL 1282367 (E.D.N.Y. Mar. 25, 2024); *Joe Hand Prods., Inc. v. Talt*, No. 21-CV-05550 (JMA) (JMW), 2022 WL 3867670, at *1 (E.D.N.Y. Aug. 30, 2022) (same); *Kingsvision Pay-Per-View Corp. v. Keane*, No. 02-CV-5173 (ILG) (MDG), 2006 WL 1704474, at *4 (E.D.N.Y. June 16, 2006) (same).

Because the undersigned recommends a finding that Plaintiff adequately alleges that Defendants violated Section 605(a), the Court "need not evaluate [P]laintiff's claim under Section 553" given the bar against recovery under both statues.[6] *See, e.g.*, Sykes, 997 F.2d at 1008-09 (explaining that when liability is established under both sections, damages should only be awarded pursuant to Section 605); *Skaf*, 2020 WL 3035351, at *3 (declining to analyze merits of Section 553 claim when the Court already found liability under Section 605). Therefore, Plaintiff's motion should be granted with respect to Cheri's liability under Section 605.

### B.    Ms. Clayton's Liability

For individual liability to attach under Sections 605(a) or 553(a), the plaintiff must establish that the defendant was individually liable through either "contributory infringement" or "vicarious liability." *J & J Sports Prods., Inc. v. Abdelraouf*, No. 18-CV-2547 (ARR) (VMS), 2018 WL 7916309, at *6-7 (E.D.N.Y. Nov. 21, 2018), *report and recommendation adopted*, 2019 WL 457719 (E.D.N.Y. Feb. 5, 2019). Contributory infringement arises when the individual "authorized the violations."     *Id.* (quotations and citation omitted). Vicarious liability can be established by showing "that defendants 'had a right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of the copyrighted materials." *Eddie Jr.'s Sports Lounge, Inc.*, 2024 WL 1285474, at *4 (quoting *J & J Sports Prods., Inc. v. Guncay*, No. 18-CV-2097 (FB) (RML), 2018 WL 6313210, at *2 (E.D.N.Y. Oct. 17, 2018), *report and recommendation adopted*, 2018 WL 6308773 (E.D.N.Y. Dec. 3, 2018)).

To establish liability, "the plaintiff must allege concrete details about the [corporate officer's] role in the activity and the amount or source of revenue potentially stemming from the

---

[6]  Additionally, because Plaintiff expressly seeks only damages arising under Section 605 (Dkt. No. 14-2 at 4), and because it has failed to address liability under Section 553, the Court deems the Section 553 claims as abandoned. *See, e.g.*, *Kouvaros*, 2022 WL 1422571, at *3 (collecting cases).

activity." *Innovative Sports Mgmt., Inc. v. Mejia*, No. 20-CV-2943 (PKC) (RER), 2021 WL 7709510, at *4 (E.D.N.Y. Aug. 3, 2021) (citations omitted); *see, e.g.*, *Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85 (ILG) (SJB), 2019 WL 885930, at *3 (E.D.N.Y. Feb. 22, 2019) (finding liability when the plaintiff alleged that the defendant "exercised control over the premises, was present during the exhibition, and authorized the exhibition"); *J & J Sports Prods., Inc. v. Vergara*, No. 19-CV-2382 (FB) (VMS), 2020 WL 1034393, at *11 (E.D.N.Y. Feb. 6, 2020) (finding defendant was not individually liable when there was no "no evidence that [he] had knowledge of, or was present for, intercepting or broadcasting the Program"), *report and recommendation adopted*, 2020 WL 1031756 (E.D.N.Y. Mar. 3, 2020).  That one is an officer, director, or other principal of a corporation does not guarantee liability for a corporation's wrongdoing.  *See J & J Sports Prods., Inc. v. James*, No. 17-CV-5359 (NGG) (ST), 2018 WL 3850731, at *5 (E.D.N.Y. July 25, 2018).

Here, the Complaint alleges that Ms. Clayton is the owner and principal of Cheri's, as identified by the New York Statue Liquor Authority License issued to the establishment.  Dkt. No. 1 at ¶¶ 9-10.  Additionally, Ms. Clayton is identified as "the sole individual" on the On Premises Liquor License issued to Cheri's.  *Id.* at ¶ 11.  The Complaint continues that as the owner and principal of Cheri's, Ms. Clayton was responsible for "dominion, control, oversight, and management" of the establishment, (*id.* at ¶ 8), and thus she had the "right and ability to supervise the activities of [Cheri's], which in included the unlawful interception, receipt, and publication of Plaintiff's Program."  *Id.* at ¶ 12.  As a result, Plaintiff asserts that Ms. Clayton had "an obvious and direct financial interest" in displaying Plaintiff's program, yielding "increased profits or financial benefit" to Defendants through the sale of alcoholic beverages during the broadcast.  *Id.* at ¶ 15.

Plaintiff's allegations are sufficient to impute vicarious liability upon Ms. Clayton for the broadcast of the Program at Cheri's in violation of 47 U.S.C. § 605(a). *See, e.g.*, *Eddie Jr.'s Sports Lounge*, 2024 WL 1285474, at *5 (finding similar allegations sufficient for vicarious liability under Section 605); *J & J Sports Prod., Inc. v. McAdam*, No. 14-CV-5461 (PKC) (CLP), 2015 WL 8483362, at *3 (E.D.N.Y. Dec. 9, 2015) (finding same and collecting cases). Accordingly, the undersigned respectfully recommends that Plaintiff's motion be granted with respect to liability for both Defendants under 47 U.S.C. § 605(a).

## VII.   Damages

### A.   Legal Standard

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "Rather, the Court must be satisfied that Plaintiff has met the burden of proving damages to the Court with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (cleaned up).

Under Federal Rule of Civil Procedure 54(c), "'[a] default judgment must not differ in kind from, or exceed the amount, what is demanded in the pleadings.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 n.16 (2d Cir. 2011) (quoting Fed. R. Civ. P. 54(c)); *see also Trustees of Metal Polishers Loc. 8aA-28A Funds v. Nu Look Inc.*, No. 18-CV-3816 (PKC) (RLM), 2020 WL 6370146, at *3 (E.D.N.Y. Feb. 14, 2020) ("[Rule 54(c)] limits a plaintiff's default judgment recovery to the relief sought in the complaint, and "ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer" (citations omitted)), *report and recommendation adopted*, 2020 WL 5793204 (E.D.N.Y. Sept. 29, 2020).

"Rule 54(c) is not violated, however, when a court awards damages that accrued during the pendency of the litigation if the complaint put defendant on notice that plaintiff might seek such damages." *Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 282 (E.D.N.Y. 2010); *King v. STL Consulting, LLC*, No. 05-CV-2719 (SJ), 2006 WL 3335115, at *4-*5 (E.D.N.Y. Oct. 3, 2006) (permitting additional damages than the amount specified in the complaint because the plaintiff established by declaration that more damages accrued during the pendency of the litigation).

Once liability is established, "the court must ascertain damages with 'reasonable certainty.'" *CIT Bank N.A. v. Elliott*, No. 15-CV-4395 (JS) (ARL), 2019 WL 4439347, at *2 (E.D.N.Y. Sept. 17, 2019) (citation omitted). "An evidentiary hearing is not required so long as there is a basis, by detailed affidavits and other documentary evidence, for the damages awarded." *Id.* (citation omitted); *Wilmington Sav. Fund Soc'y, FSB ex rel. Aspen Holdings Tr. v. Fernandez*, 712 F. Supp. 3d 324, 330 (E.D.N.Y. 2024) ("The court may determine damages without an in-person hearing based on the plaintiff's affidavits so long as it can ensure a basis for the damages specified in the default judgment"). "The party seeking to recover costs bears the burden of adequately documenting and itemizing the costs requested." *CIT Bank N.A.*, 2019 WL 4439347, at *2 (cleaned up).

**B.    Discussion**

Plaintiff seeks $1,800.00 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) and $5,400.00 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii), for a total of $7,200.00 in damages. The Court discusses each request in turn.

**i.    Statutory Damages**

A plaintiff alleging violations of Section 605 "is entitled to elect statutory or actual damages." *Eddie Jr.'s Sports Lounge*, 2024 WL 1285474, at *6 (citing 47 U.S.C. §

605(e)(3)(C)(i)).   When a claimant seeks statutory damages, penalties are available for each violation of Section 605(a) "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).  Although Section 605 "requires the court to assess damages based on each 'violation' of the statute," the statute provides no definition for what constitutes a "violation." *Eddie Jr.'s Sports Lounge*, 2024 WL 1285474, at *6 (citing *Garden City Boxing Club, Inc. v. Rosado*, No. 05-CV-1037 (DLI) (JMA), 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005)).  In cases involving theft of services by a commercial establishment, however, most courts "have interpreted the showing of a single event on a single night as one violation."  *J & J Sports Prods., Inc. v. Mangos Steakhouse & Bakery, Inc*., No. 13-CV-5068 (RJD), 2014 WL 2879868, at *6 (E.D.N.Y. May 7, 2014), *report and recommendation adopted*, 2014 WL 2879890 (E.D.N.Y. June 24, 2014); *see also J & J Sports Prods., Inc. v. Afrikan Poetry Theatre Inc.*, No. 17-CV-2196 (ARR) (CLP), 2018 WL 2078482, at *5 (E.D.N.Y. Feb. 27, 2018), *report and recommendation adopted*, 2018 WL 1725692 (E.D.N.Y. Apr. 10, 2018); *Time Warner Cable of New York City v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997).

"The amount of damages assessed pursuant to Section 605 rests within the sound discretion of the Court." *Time Warner Cable*, 988 F. Supp. at 111; *see also Rosado*, 2005 WL 3018704, at *3.  "The factors to be considered in determining the appropriate amount of damages include the 'pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant[,] as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose.'" *Eddie Jr.'s Sports Lounge*, 2024 WL 1285474, at *6 (quoting *Mangos Steakhouse & Bakery, Inc*., 2014 WL 2879868, at *6); *Cablevision Sys. Corp. v. De Palma*, No. 87-CV-3528 (JLC), 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989)).

When determining the amount of statutory damages under Section 605, "courts in this Circuit have generally taken one of two different approaches in determining a base amount of statutory damages[.]" *Joe Hand Promotions, Inc. v. Batista*, No. 20-CV-6460 (JPC) (SLC), 2021 WL 3855315, at *7 (S.D.N.Y. July 23, 2021), *report and recommendation adopted*, 2021 WL 3855311 (S.D.N.Y. Aug. 27, 2021); *Rosado*, 2005 WL 3018704, at *3. "The first approach has been to award a flat sum, based on a plaintiff's submitted evidence as to the amount of the license fee that the particular establishment, given its size, would have had to pay to secure the rights to the broadcast in question." *Batista*, 2021 WL 3855315, at *7 (citing *J&J Sports Prods., Inc. v. Fantasy Bar & Rest. Corp.*, No. 17-CV-05355 (JGK) (DF), 2018 WL 5018065, at *4 (S.D.N.Y. Sept. 20, 2018)); *Eddie Jr.'s Sports Lounge*, 2024 WL 1285474, at *7; *Taco Rapido Rest.*, 988 F. Supp. at 111.

"Other courts have assessed damages based on the number of patrons in the commercial establishment during the broadcast." *Mangos Steakhouse & Bakery*, 2014 WL 2879868, at *7 (collecting cases); *Afrikan Poetry Theatre*, 2018 WL 2078482, at *6; *see, e.g.*, *Rosado*, 2005 WL 3018704, at *3-*4 (multiply number of patrons at the establishment by residential broadcast charge to calculate damages). "Courts employing this approach have typically used a multiplier of approximately $50 per patron, with several Eastern District of New York courts using $54.95 per patron as a 'market-based standard.'" *Batista*, 2021 WL 3855315, at *8 (citing *Fantasy Bar & Rest.*, 2018 WL 5018065, at *4 (collecting cases)).

Here, Plaintiff requests $1,800 in statutory damages. *See* Dkt. No. 14-5 at 2; Dkt. No. 14-2 at 10. Plaintiff seeks statutory damages based on a three-times multiplier of the flat fee methodology (i.e., three times the value of the $600 commercial licensing fee), noting that use of the flat fee methodology would "undervalue[] the Program and fail[] to compensate Plaintiff

24

adequately." *Id.* Alternatively, Plaintiff requests that it be awarded $899.88 in statutory damages based on a $74.99 per person multiplier should the Court instead elect to use the per-person methodology. *Id.* at 10.

To support its request for an award that is triple the flat fee, Plaintiff cites to a Southern District of New York decision, where that court deviated from the two standard statutory damages calculus. *Id.* (citing *J & J Sports Productions, Inc. v. Ramirez*, No. 17-CV-6926 (RWS), 2018 WL 1961107, at *2 (S.D.N.Y. Apr. 9, 2018)). Specifically, the court found that use of the flat fee or multiplier method would not adequately reflect the plaintiff's damages, as it would neglect "the purchases of food and drink that [the] [d]efendants gained by illegal distribution of the program, in addition to the depressed sublicense fee prices [the] [p]laintiff could recoup due to the 'unavailability of unauthorized access to the program.'" *Ramirez*, 2018 WL 1961107, at *2 (quoting *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001)). Thus, the Court awarded the plaintiff statutory damages in the amount of double the price of the commercial licensing fee. *Id.* at *1-*2 (awarding the plaintiff $4,400 in statutory damages where the licensing fee was $2,200).

Here, the Court agrees that a statutory damages award consistent with *Ramirez* is appropriate. As illustrated by the social media posts promoting the Program at Cheri's, Defendants advertised that they "got the drinks[,] the food[,] & the music," including the availability of brunch being served "start[ing] at noon" on the day of the Program. Dkt. No. 14-3 at 38. Accordingly, the Court is persuaded that a statutory damages award at the rate of the $600 commercial licensing fee or $899.88 based on the patrons at the establishment would fail to account for the profits attributable to the food and drink served at the establishment during the illegal broadcast of the Program. Indeed, damages in the other two amounts would fail to exceed the statutory minimum

of $1,000 under 47 U.S.C. § 605(e)(3)(C)(ii).  *See Sylvestre*, 2021 WL 810338, at *3 (noting

sufficiency of statutory award that was greater than the minimum under Section 605).

In light of Mr. Tamburo's observation that there were only eleven to twelve patrons at

Cheri's when he visited the premises, however, the Court declines to triple the price of the fee as

the award for statutory damages per Plaintiff's request, and instead elects to follow *Ramirez* in

doubling the fee.  *See* 2018 WL 1961107, at *2; *see also Jasper Grocery*, 152 F. Supp. 2d at 442

(accounting for the defendant's profits from food and beverage purchases in awarding statutory

damages under Section 605 that was double the licensing fee); *Garden City Boxing Club, Inc. v.

Paquita's Cafe, Inc.*, No. 06-CV-6953 (RMB) (JCF), 2007 WL 2783190, at *4 (S.D.N.Y. Sept.

26, 2007) (same and collecting cases), *report and recommendation adopted*, 2007 WL 2981928

(S.D.N.Y. Oct. 10, 2007); *accord Innovative Sports Mgmt., Inc. v. Tumi Int'l, Inc.*, No. 20-CV-

14253 (KM), 2021 WL 4026112, at *5 (D.N.J. Sept. 2, 2021) (same); *cf. G&G Closed Cir. Events,

LLC v. Cofie*, No. 21-CV-6920 (NRB), 2024 WL 4871637, at *3 (S.D.N.Y. Nov. 22, 2024)

(awarding same on summary judgment posture).

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $1,200.00

in statutory damages.

### ii.    Enhanced Statutory Damages

In the Court's discretion, enhanced statutory damages awarded to a claimant under Section

605(e)(C)(ii) of up to $100,000 if the plaintiff shows that the defendant's violation "was willful

and committed for the 'purposes of direct or indirect commercial advantage or private financial

gain.'"  *Sylvestre*, 2021 WL 810338, at *3 (quoting 47 U.S.C. § 605(e)(3)(C)(ii)).  Courts have

found that "the broadcast of an event without authorization is a deliberate act, and thus establishes

willfulness."  *J & J Sports Prods., Inc. v. Welch*, No. 10-CV-0159 (KAM), 2010 WL 4683744, at

*4 (E.D.N.Y. Nov. 10, 2010) (citing *Taco Rapido Rest.*, 988 F. Supp. at 111); *see, e.g.*, *Mohamed*, 2021 WL 2895637, at *8; *J & J Sports Prods., Inc. v. Big Daddy's Theme Palace*, Inc., No. 14-CV-2765 (JG) (JMA), 2015 WL 58606, at *4 (E.D.N.Y. Jan. 5, 2015). Factors to consider in an award of enhanced damages include "(i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *Circuit Cerrado*, 804 F. Supp. 2d at 116; *Big Daddy's Theme Palace*, 2015 WL 58606, at *4; *J & J Sports Prods., Inc. v. Chulitas Enter. Corp.*, No. 12-CV-3177 (JS) (WDW), 2014 WL 917262, at *5 (E.D.N.Y. Mar. 10, 2014).

"In circumstances demonstrating a willful and purposeful violation, a court can assess enhanced damages in conjunction with statutory damages, and courts 'typically fix the amount of enhanced damages as a multiple of the [basic] statutory damages award.'" *Mohamed*, 2021 WL 2895637, at *8 (quoting *Sylvestre*, 2021 WL 810338, at *6). Courts in this district have "typically set damages at either two or three times the amount of the basic statutory damages." *Id.*; *Big Daddy's Theme Palace*, 2015 WL 58606, at *5 ("recent court opinions examining this issue have decided that double the statutory damages is the appropriate award for enhanced damages"); *see, e.g.*, *Welch*, 2010 WL 4683744, at *5 (awarding double the statutory damages for enhanced damages); *Sylvestre*, 2021 810338, at *6 (same); *Circuito Cerrado*, 804 F. Supp. 2d at 116 (awarding just over double the statutory award).

Here, Defendants' broadcast of the Program establishes that the violation was deliberate and thus willful. *See Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490-91 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"). Additionally, Plaintiff produces

four Instagram posts from an account advertising the Program at Cheri's: one advertising food, beverages, music, and brunch during the day of the Program (Dkt. No. 14-3 at 38), and the others exhibiting that the Program was broadcast to and viewed by patrons of the establishment. *Id.* at 39-41.

Plaintiff, however, fails to proffer evidence that Defendants committed past violations or imposed cover charges for entry or premiums for food and drink during the illicit broadcast, and further fails to claim significant damages apart from the $600 commercial licensing fee. In light of the circumstances, the Court should award enhanced statutory damages at double the award of the basic statutory damages. Such an award is consistent with enhanced damages awards in similar circumstances. *See, e.g.*, *Mohamed*, 2021 WL 2895637, at *8 (awarding enhanced damages that were double the statutory damages); *Circuito Cerrado*, 804 F. Supp. 2d at 111 (same); *Welch*, 2010 WL 4683744, at *5 (same); *Sylvestre*, 2021 WL 810338, at *6 (same); *J & J Sports Prods., Inc. v. Onyx Dreams Inc.*, No. 12-CV-5355 (SLT) (LB), 2013 WL 6192546, at *7 (E.D.N.Y. Nov. 26, 2013) (same); *Traffic Sports USA v. La Camisa Negra Rest. & Bar Corp.*, No. 11-CV-1475 (ARR) (RLM), 2012 WL 3064129, at *6 (E.D.N.Y. May 23, 2012) (same), *report and recommendation adopted*, 2012 WL 3065523 (E.D.N.Y. July 27, 2012).

In sum, the undersigned respectfully recommends that Plaintiff be awarded $1,200.00 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) and $2,400.00 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii), for a total of $3,600.00 in damages.

## VIII.   Costs and Reasonable Attorneys' Fees

Plaintiff is also entitled to costs and reasonable attorneys' fees under 47 U.S.C. § 605(e)(3)(B)(iii). *See Sykes*, 997 F.2d at 1009. Plaintiff requests that it be permitted to file its motion for costs and attorneys' fees within 30 days "from the date the judgment becomes final."

Dkt. No. 14-2 at 13. "The practice of submitting a motion for fees and costs following the order of the district court has been accepted in this district." *G & G Closed Cir. Events, LLC v. Alba*, No. 22-CV-3248 (FB) (CLP), 2023 WL 5646136, at *10 (E.D.N.Y. Aug. 9, 2023), *report and recommendation adopted*, 2023 WL 5625448 (E.D.N.Y. Aug. 31, 2023) (collecting cases).

Accordingly, the undersigned respectfully recommends that Plaintiff's be granted leave to file its motion for costs and attorneys' fees—including an affidavit and detailed, contemporaneous time records establishing the amount of attorneys' fees and costs it seeks to recover— within 30 days of any ruling upon this Report and Recommendation.

## IX.    Conclusion

In sum, the undersigned finds that Plaintiff sufficiently alleges Defendants' violations of 47 U.S.C. § 605, and that its motion for default judgment be granted in part and denied in part. The undersigned respectfully recommends that Plaintiff be awarded $1,200.00 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) and $2,400.00 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii), for a total of $3,600.00 in damages. The undersigned additionally respectfully recommends that Plaintiff be permitted to file its motion for costs and attorneys' fees within 30 days of any ruling upon this Report and Recommendation.

A copy of this Report and Recommendation is being electronically served on counsel. This Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendants and to file proof of service on ECF by March 31, 2025.

Copies shall be served at the following address:

Torri Clayton
725 Monroe Street, Apt. 1
Brooklyn, NY 11221

Cheri's BedStuy d/b/a Cheri's Bedstuy
216 Malcom X Boulevard

Brooklyn, NY 11221

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Block. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:      Brooklyn, New York
            March 28, 2025                    **SO ORDERED.**

                                                 _/s/ Joseph A. Marutollo_
                                                 JOSEPH A. MARUTOLLO
                                                 United States Magistrate Judge